IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| GHOST CONTROLS, LLC. | § | Civil Action No: |
| Plaintiff, | § § § | |
| vs. | § § | |
| GATE1ACCESS LLC., and JULIO TOLEDO, individually, | § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § § § | |

## COMPLAINT

Plaintiff Ghost Controls, LLC ("Plaintiff"), by and through its attorneys, hereby filed this Complaint against defendants Gate1Access LLC. and Julio Toledo, an individual (collectively "Defendants"), and alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.     This is an action for infringement of Plaintiff's federally-registered trademarks GHOST CONTROLS (hereinafter the "GHOST CONTROLS Mark"), in standard characters, U.S. Reg. No. 5,519,466, and  (hereinafter the "GC GHOST CONTROLS Mark"), U.S. Reg. No. 5,519,452, and its unregistered common law trademark  (hereinafter the "GC Mark" and collectively the "Ghost Controls Trademarks"), U.S. Ser. No. 88,861,080, under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) and state common law, for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §

1125(a), for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims of deceptive and unfair trade practices under Fla. Stat. §§ 542.335(1)(b)(1), 501.201 *et seq.*, and common law trademark infringement of the same under the statutory and common laws of the State of Florida, all arising from the Defendants' unauthorized use of the GHOST CONTROLS and GC logo marks in connection with the manufacture, distribution, marketing, advertising, promotion, offering for sale, and/or sale of Defendants' electric gate opener and controller goods. Plaintiff seeks injunctive and monetary relief therefor.

2.      Plaintiff also brings this action seeking injunctive and monetary relief for Defendants' intentional infringement of Plaintiff's copyright in Plaintiff's Ghost Controls AXP1 Premium Remote Transmitter Instructions, U.S. Copyright Reg. No. TX 8-860-010 (the "Copyrighted Work") under the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. § 101 et seq. arising from Defendants' copying, reproduction, distribution, public display, and sale of the Copyrighted Work without Plaintiff's consent. Plaintiff seeks all remedies afforded by the Copyright Act, including preliminary and permanent injunctive relief, Plaintiff's damages and Defendants' profits from Defendants' willfully infringing conduct, and other monetary relief.

**JURISDICTION**

3.      This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4.      This court has personal jurisdiction over the Defendants because, among other things, Defendants reside, maintain a business, and have done and are doing business in the State

of Florida and in this judicial district. Further, the Defendants have caused injury to the Plaintiff within the State of Florida and in this district.

## VENUE

5.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendants resides in this district, 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, 28 U.S.C. § 1391(b)(2), in that a substantial part of property that is the subject of the action is situated in this district, and/or 28 U.S.C. § 1391(b)(3), in that Defendants are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought. Venue is also proper in this district under 28 U.S.C. § 1400(a) because Defendants reside or may be found in this district.

## PARTIES

6.    Plaintiff Ghost Controls, LLC ("Ghost Controls") is a limited liability company formed under the laws of Florida, and maintains a principal place of business at 1572 Capital Circle Northwest, Tallahassee, Florida 32303.

7.    Upon information and belief, Defendant Julio Toledo ("Toledo") is an individual who resides in Clermont, Florida and maintains a business address at 10582 Lakehill Dr., Clermont, Florida 34711.

8.    Upon information and belief, Defendant Gate1Access LLC. ("Gate1Access") is a limited liability company formed under the laws of Florida and does business in Clermont, Florida, and maintains a principal place of business at 10582 Lakehill Dr., Clermont, Florida 34711.

# FACTS

A.    Plaintiff and its Trademarks

9.    Plaintiff is an industry leader in automatic gate openers and related products, which it designs, manufactures, and sells to consumers under its various trademark names and logos.

10.    Plaintiff is the owner of valid and subsisting United States Trademark Registration No. 5,519,466 on the Principal Register in the United States Patent and Trademark Office for the trademark GHOST CONTROLS (hereinafter "GHOST CONTROLS Mark") for "Electric gate operators; Hydraulic gate operators." Attached as Exhibit 1 is a true and correct copy of the registration certificate for the GHOST CONTROLS Mark, which was issued by the United States Patent and Trademark Office on July 17, 2018.

11.    Plaintiff has used the GHOST CONTROLS Mark in commerce throughout the United States continuously since April 15, 2015 in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising and promotion of its electric gate operators and hydraulic gate operators. As a result of its widespread, continuous, and exclusive use of the GHOST CONTRLS Mark to identify its products and Plaintiff as the source thereof, Plaintiff owns valid and subsisting federal statutory and common law rights to the GHOST CONTROLS Mark.

12.    Plaintiff is the owner of valid and subsisting United States Trademark Registration No. 5,519,452 on the Principal Register in the United States Patent and Trademark Office for the trademark  (hereinafter the "GC GHOST CONTROLS Mark") for "Electric gate operators; Hydraulic gate operators." Attached as Exhibit 2 is a true and correct

copy of the registration certificate for the GC GHOST CONTROLS Mark, which was issued by the United States Patent and Trademark Office on July 17, 2018.

13.    Plaintiff has used the GC GHOST CONTROLS Mark in commerce throughout the United States continuously since April 15, 2015 in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising and promotion of its electric gate operators and hydraulic gate operators. As a result of its widespread, continuous, and exclusive use of the GC GHOST CONTRLS Mark to identify its products and Plaintiff as the source thereof, Plaintiff owns valid and subsisting federal statutory and common law rights to the GC GHOST CONTROLS Mark.

14.    Plaintiff is the owner of United States Trademark Application Serial No. 88,861,080 on the Principal Register in the United States Patent and Trademark Office for the trademark  (hereinafter the "GC Mark") for "Electric gate operators; Hydraulic gate operators." Attached as Exhibit 3 is a true and correct copy of the USPTO's TESS database for the GC Mark, which was filed with the United States Patent and Trademark Office on April 6, 2020.

15.    Plaintiff has used the GC Mark in commerce throughout the United States continuously since August 1, 2016 in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising and promotion of its electric gate operators and hydraulic gate operators. As a result of its widespread, continuous, and exclusive use of the GC Mark to identify its products and Plaintiff as the source thereof, Plaintiff owns valid and subsisting federal statutory and common law rights to the GC Mark.

16.     Attached hereto as Exhibit 4 are copies of representative samples of Plaintiff's website and products showing Plaintiff's use of the Ghost Controls Trademarks in connection with its products.

17.     Plaintiff's Ghost Controls Trademarks is distinctive to both the consuming public and Plaintiff's trade.

18.     Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the electric gate operators and hydraulic gate operators sold under the Ghost Controls Trademarks including through various social media, e-commerce platforms, tradeshows, and other marketing campaigns. During the period from September 2016 to the present, Plaintiff has expended in excess of $280,000 on the marketing, advertising, and promotion of their remote transmitter products alone, and during the period from August 1, 2016 to the present, Plaintiff has expended in excess of $1,150,000 on the marketing, advertising, and promotion of all goods sold under the Ghost Controls Trademarks and brand.

19.     Plaintiff sells these goods under the Ghost Controls Trademarks through its online listings on both its own website, GhostControls.com, and common sales platforms for such goods, including Amazon.com, eBay.com, and the like, in addition to through over 900 private dealers nationwide, including Home Depot, Lowes, Tractor Supply, and other home improvement stores for sale both online and at their brick and mortar locations.

20.     During the period from July 2016 to the present, Plaintiff has sold in excess of 12,700 units of just its AXP1 Remote Transmitter for total sales in excess of $470,000, and during the period from July 1, 2016, through March 31, 2020, Plaintiff has sold in excess of $19,250,000 across all of its Ghost Controls Trademarks and branded goods.

21.     Plaintiff offers and sells its goods under its Ghost Controls Trademarks to commercial and residential consumers in the market for such goods.

22.     The goods Plaintiff offers under the Ghost Controls Trademarks are regularly recognized for being of a high quality and exceeding industry standards.

23.     As a result of Plaintiff's expenditures and efforts, the Ghost Controls Trademarks have come to signify the high quality of its goods designated by these trademarks, and have acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

24.     Plaintiff's Ghost Controls Trademarks and the goods offered thereunder have received significant accolades including being awarded as the top new vendor and top new product several times at several private dealer tradeshows.

25.     As a result of its distinctiveness and widespread use and promotion throughout the United States, Plaintiff's Ghost Controls Trademarks are famous trademarks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of the Defendants alleged herein.

26.     Plaintiff has actively and successfully enforced and protected its Ghost Controls Trademarks against past infringers throughout the United States.

B.     <u>Plaintiff and its Copyrighted Work</u>

27.     Plaintiff's employees ("Employees") created the Copyrighted Work in 2017 as part and within the scope of their employment with Plaintiff. Because the Copyrighted Work is a work made for hire within the scope of Employees' employment with Plaintiff, Plaintiff owns

any and all copyright rights in the Copyrighted Work. A true and correct copy of the Copyrighted Work is attached hereto as Exhibit 5.

28.     The Copyrighted Work is wholly original, with the exception of certain FCC compliance language excluded from the claimed material, and Plaintiff is the exclusive owner of all rights, title, and interest, including all rights under copyright, in the Copyrighted Work.

29.     Plaintiff is the owner of valid and subsisting United States Copyright Registration No. TX 8-860-010 for the Copyrighted Work, issued by the United States Copyright Office on April 7, 2020, with an effective date of April 6, 2020. Attached as Exhibit 6 is a true and correct copy of the registration certificate for Plaintiff's Registration No. TX 8-860-010.

30.     Plaintiff has distributed the Copyrighted Work with its AXP1 model remote transmitters sold under the Ghost Controls Trademarks.  This distribution has been a tremendous success as it provides valuable information to consumers about these products in a easy to understand manner. All public depictions of the Copyrighted Work are accompanied by an appropriate copyright notice indicating that Plaintiff is the owner of all rights in the work.

31.     The Copyrighted Work is of significant value to Plaintiff because it has been specifically prepared in order to assist consumers of its authentic goods sold under the Ghost Controls Trademarks, and consumers value Ghost Controls' goods in part for their quality, the ease of use, and straight forward instructions such as the Copyrighted Work provided therewith.

B.     Defendants' Unlawful Activities

32.     Upon information and belief, Defendants are engaged in electric and hydraulic gate operators, including accessories and parts therefor.

33.     Without Plaintiff's authorization, and upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in each of its Ghost Controls Trademarks, Defendants adopted and began using marks identical to Plaintiff's GHOST CONTROLS Mark and GC Mark (hereinafter, the "Infringing Marks") in U.S. commerce.

34.     Plaintiff first became aware of Defendant's infringing goods and listings on or around March 18, 2020, upon discovering Defendant's Amazon.com product listings.

35.     The Infringing Marks adopted and used by Defendants are identical and confusingly similar to Plaintiff's GHOST CONTROLS Mark, GC Mark, and GC GHOST CONTRLS Mark. Defendants' Infringing Marks include the use of the wording "Ghost Controls" in the product listings of its infringing goods, and a stylized "GC" logo design, with the same stylization as the GC Mark and the "GC" portion of the GC GHOST CONTROLS Mark, in its product listings and located physically on the infringing goods being sold therethrough. Further, the Defendants' infringing goods include a gate controller show an infringing reproduction of the GC Mark located on the buttons thereof in the exact same style, font, location, and orientation as Plaintiff's genuine goods.

36.     Upon information and belief, Defendants have been engaged in the manufacture, distribution, provision, advertising, promotion, offering for sale, and sale of electric and hydraulic gate operators, including accessories and parts therefor, using the Infringing Marks throughout the U.S. Attached hereto as Exhibit 7 are true and correct copies of representative product listings of the Defendants showing Defendants' use of the Infringing Marks.

37.     Upon information and belief, the goods Defendants have manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and sold under the

Infringing Marks are intended to operate the same Ghost Controls equipment as their genuine counterparts sold by Ghost Controls, and are marketed and directed towards existing consumers of Ghost Controls as a lower priced replacement.

38.     Upon information and belief, Defendants have manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and sold its goods under the Infringing Mark through various trade channels and online marketplaces including at least Amazon.com and eBay.com.

39.     Upon information and belief, Defendants have marketed, advertised, and promoted its goods under the Infringing Mark through online retail platforms such as Amazon.com and eBay.com such that Defendants' goods will appear in search results when consumers are searching for Ghost Controls' goods.

40.     Upon information and belief, Defendants offer and sell their goods under the Infringing Mark to existing consumers of Ghost Controls.

41.     Upon information and belief, the remote transmitters Defendants offer under the Infringing Mark are inferior in quality and do not meet current FCC regulatory standards. The Defendant's goods sold under the Infringing Mark utilize an inferior crystal resonator, and inferior battery, and fail to include a protective isolation cover for a visor clip screw, among other things.

42.     Defendants reproduced and distributed, or caused to be published and distributed, identical copies of the Copyrighted Work by including the infringing reproductions with its

remote transmitters being sold under the Infringing Marks. Attached hereto as Exhibit 8 is a photograph depicting Defendants' unlawful reproduction of the Copyrighted Work.

43.     Defendants' use of the Copyrighted Work is without Plaintiff's authorization, consent, or knowledge, and without any compensation to Plaintiff.

44.     Since Defendants began exploiting the Copyrighted Work, it has continued to levy the value of Ghost Controls' Copyrighted Work by including the same with their counterfeit goods, likely to further deceive consumers into believing that the goods are genuine Ghost Controls products. On information and belief, Defendants continue to reproduce the Copyrighted Works and include the same with the goods sold the Infringing Marks to consumers.

45.     On information and belief, Defendants' identical copying and exploitation of the Copyrighted Work was willful, and in disregard of, and with indifference to, the rights of Plaintiff. On further information and belief, Defendants' intentional, infringing conduct was undertaken to reap the benefit and value associated with the Copyrighted Work. By failing to obtain Plaintiff's authorization to use the Copyrighted Work or to compensate Plaintiff for the use, Defendants have avoided payment of license fees and other financial costs associated with obtaining permission to exploit the Copyrighted Work, as well as the restrictions that Plaintiff is entitled to and would place on any such exploitation as conditions for Plaintiff's permission, including the right to deny permission altogether.

46.     On April 13, 2020, Plaintiff's counsel sent a cease and desist letter to Defendants objecting to Defendants' use of the Infringing Mark and Copyrighted Work.

47.     To date, Plaintiff has received no response to its cease and desist letter and, Defendants have failed to comply with the demands set out in Plaintiff's counsel's cease and desist letter.

48.     On or around April 27, 2020, Plaintiff placed an order for Defendant's goods, which upon inspection still bear the Ghost Controls Trademarks and include the Copyrighted Work.

49.     Defendants' infringing acts as alleged herein are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' infringing goods, including at least its remote transmitters, and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' goods originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

50.     Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's Ghost Controls Trademarks, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's goods to the Defendant.

51.     Likewise, as a result of Defendants' actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and sale of the Copyrighted Work with these infringing goods. Defendants have never accounted to or otherwise paid Plaintiff for its use of the Copyrighted Work.

52.     Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

## COUNT ONE

## Federal Trademark Infringement

53.     Plaintiff repeats and realleges paragraphs 1 through 50 hereof, as if fully set forth herein.

54.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

55.     Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the GHOST CONTROLS Mark, GC GHOST CONTROLS Mark, and GC Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

56.     Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

57.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TWO
## Federal Unfair Competition

58. Plaintiff repeats and realleges paragraphs 1 through 55 hereof, as if fully set forth herein.

59. Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

60. Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

61. Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

62. Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

64.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual

damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and

costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117,

together with prejudgment and post-judgment interest.


## COUNT THREE
### Federal Trademark Dilution

65.     Plaintiff repeats and realleges paragraphs 1 through 62 hereof, as if fully set forth

herein.

66.     Plaintiff's Ghost Controls Trademarks are distinctive and are "famous marks"

within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

67.     Plaintiff's Ghost Controls Trademarks became distinctive and famous prior to the

Defendants' acts as alleged herein.

68.     Defendants' acts as alleged herein have diluted and will, unless enjoined, continue

to dilute and are likely to dilute the distinctive quality of Plaintiff's famous Ghost Controls

Trademarks.

69.     Defendants' acts as alleged herein have tarnished and will, unless enjoined,

continue to tarnish, and are likely to tarnish Plaintiff's Ghost Controls Trademarks by

undermining and damaging the valuable goodwill associated therewith.

70.     Defendants' acts as alleged herein are intentional and willful in violation of

Section 43(c)(1) of the Lanham Act, and have already caused Plaintiff irreparable damage and

will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

71.     Plaintiff is entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT FOUR

### Florida Common Law Trademark Infringement

72.     Plaintiff repeats and realleges paragraphs 1 through 69 hereof, as if fully set forth herein.

73.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes trademark infringement under Florida common law.

74.     Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the GHOST CONTROLS Mark, GC GHOST CONTROLS Mark, and GC Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

75.     Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

76. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Florida common law, together with prejudgment and post-judgment interest.

## COUNT FIVE

**Deceptive and Unfair Trade Practices Under Florida Statute and Common Law**
**FLA. STAT. §§ 501.207 – 501.2075**

77. Plaintiff repeats and realleges paragraphs 1 through 74 hereof, as if fully set forth herein.

78. Defendants substantially and personally participated in the false and misleading representations and deceptive conduct set forth hereinabove.

79. Defendants' false and misleading representations and deceptive conduct are material in that the same have caused and are likely to cause prospective consumers of the Plaintiff's products to be deceived as to the origin of the goods and as to the level of quality of the product.

80. Defendants have disparaged the goods and services and business of Plaintiff through false and misleading representations of material fact by conveying to consumers that its inferior goods were in some way affiliated with or sponsored by Plaintiff, and that such goods would carry with them the same level of quality and support customers have come to expect of Plaintiff's goods.

81.     Upon information and belief, the Defendants provided knowingly false and misleading representations of fact and conduct in violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq.

82.     As a direct and proximate result of said misleading and deceptive conduct, the Plaintiff, as well as consumers, has sustained and are likely to continue to sustain damages in an amount not yet known.

83.     Defendant Julio Toledo is personally liable for the afore-described deceptive and unfair trade practices because, upon information and belief, he personally directed, controlled, and participated in the unfair activity.

84.     Pursuant to Florida's Deceptive and Unfair Trade Practices Act §§ 501.207 – 501.2075, the Plaintiffs are entitled to and seek equitable relief to enjoin Defendants' unlawful conduct as well as to obtain attorney's fees, costs, and statutory damages.

85.     The damage is irreparable in that the precise amount of damage to Plaintiff's reputation and business is difficult to ascertain, so that Plaintiff's remedy at law is inadequate. Unless Defendants are restrained under Fla. Stat. § 501.211, from doing the wrongful acts complained of, Defendants shall continue to do these acts.

## COUNT SIX

### Federal Copyright Infringement

### (17 U.S.C. § 501)

86.     Plaintiff repeats and realleges paragraphs 1 through 50 hereof, as if fully set forth herein.

87.     The Copyrighted Work is an original instruction sheet and manual for Ghost Controls AXP1 remote transmitters containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. Plaintiff is the exclusive owner of rights under copyright in and to the Copyrighted Work. Plaintiff owns a valid copyright registration for the Copyrighted Work, attached as Exhibits 6 and 5 respectively.

88.     Through Defendants' conduct alleged herein, including Defendants' reproduction, distribution, and sale of the Copyrighted Work without Plaintiff's permission, Defendants have directly infringed Plaintiff's exclusive rights in the Copyrighted Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

89.     On information and belief, Defendants' infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the Copyrighted Work, and has enabled Defendants illegally to obtain profit therefrom.

90.     As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendants' profits attributable to Defendants' infringing conduct alleged herein, and an accounting of and a constructive trust with respect to such profits.

91.     Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Defendants' willful infringing conduct, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

92.     Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

93.     As a direct and proximate result of the Defendants' infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe the Copyrighted Work. Plaintiff therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1.     That Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114); Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

2.     That Defendants have violated Florida statutory and common law for trademark infringement and unfair and deceptive trade practices.

3.     That Defendants have violated Section 501 of the Copyright Act (17 U.S.C. § 501).

3.     Granting an injunction temporarily, preliminarily and permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

a. manufacturing, distributing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, sell, market, advertise or promote any goods bearing the Infringing Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Ghost Controls Trademarks;

b. engaging in any activity that infringes Plaintiff's rights in its ghost controls Trademarks;

c. engaging in any activity constituting unfair competition with Plaintiff;

d. engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's Ghost Controls Marks;

e. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

f. using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

g. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the

Ghost Controls Trademarks or any other mark that infringes or is likely to be confused with Plaintiff's Ghost Controls Trademarks, or any goods or services of Plaintiff, or Plaintiff as their source;

h.   manufacturing, distributing, marketing, advertising, promoting, displaying, or selling or authorizing any third party to manufacture, distribute, market, advertise, promote, display, or sell the Copyrighted Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work; and

i.   aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (h).

4.   Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods.

5.   Directing Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the Ghost Controls Trademarks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Ghost Controls Trademarks, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendants' goods or services to cease

forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the Ghost Controls Trademarks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's Ghost Controls Trademarks, and to immediately remove them from public access and view.

6. Directing that Defendants recall and deliver up for destruction or other disposition all goods, packaging, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the Ghost Controls Trademarks or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's Ghost Controls Trademarks.

7. Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants has complied therewith.

8. That Defendants be ordered to provide an accounting of Defendants' profits attributable to Defendants' infringing conduct, including Defendants' profits from sales and any other exploitation of the Copyrighted Work, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work.

9. That Defendants be ordered to destroy or deliver up for destruction all materials in Defendants' possession, custody, or control used by Defendants in connection with Defendants' infringing conduct, including without limitation all remaining inventory of the Copyrighted

Work and any products and works that embody any reproduction or other copy or colorable imitation of the Copyrighted Work, as well as all means for manufacturing them.

10.     That Defendants, at their own expense, be ordered to recall the Copyrighted Work from any distributors, retailers, vendors, or others that have distributed the Copyrighted Work on Defendants' behalf, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work, and that Defendants be ordered to destroy or deliver up for destruction all materials returned to it.

11.     Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

12.     Awarding Plaintiff, should Plaintiff so elect, statutory damages pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1117(c)) instead of actual damages of profits.

13.     Directing that Defendants account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

14.     Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

15.      Awarding Plaintiff Defendants' profits obtained as a result of Defendants' infringing conduct, including but not limited to all profits from sales and other exploitation of the Copyrighted Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work, or in the Court's discretion, such amount as the Court finds to be just and proper.

16.     Awarding Plaintiff damages sustained by Plaintiff as a result of Defendants' infringing conduct, in an amount to be proven at trial.

17.     Awarding Plaintiff, should Plaintiff so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits.

18.     Awarding Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

19.     Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

20.     Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

21.     Awarding such other and further relief as the Court deems just and proper.

Dated June 25, 2020.                    Respectfully submitted,


By: /s/ Andrew S. Rapacke
Attorney for Plaintiff
The Rapacke Law Group, P.A.
Florida Bar No. 0116247
1840 N. Pine Island Road
Plantation, FL 33322
Telephone: (954) 951-0154
Facsimile: (954) 206-0484
Email: andy@arapackelaw.com