UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| GHOST CONTROLS, LLC. § § Plaintiff, § § vs. § § GATE1ACCESS LLC., and § JULIO TOLEDO, an individual, § § Defendants. § § § | Case No. 5:20-cv-00288-RBD-PRL |

### PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

Plaintiff, Ghost Controls, LLC ("Plaintiff"), by and through undersigned counsel, pursuant to Federal Rules of Civil Procedure 55 and Middle District of Florida Local Rule 1.07, respectfully request the Court to enter a final default judgment against, Defendants, Gate1Access LLC ("Gate1Access") and Julio Toledo, an individual ("Mr. Toledo"), for failure to plead or otherwise defend, and would show:

### Procedural Background

1. On June 25, 2020, Plaintiff filed a Complaint (D.E. 1) for damages and injunctive relief against Gate1Access and Mr. Toledo. Thereafter, Plaintiff filed an Amended Complaint (D.E. 8) and on July 15, 2020, summonses were issued for Gate1Access and Mr. Toledo (D.E. 10 and 11).

2. On July 17, 2020, Plaintiff served Gate1Access and Mr. Toledo, who is the registered agent for Gate1Access, each with a summons and a copy of Plaintiff's Amended Complaint and original Complaint. As indicated by the Affidavit of Return of Service filed on

August 10, 2020 (D.E. 15), Mr. Toledo, individually, and as registered agent of Gate1Access, were personally served at his residence at 10582 Lakehill Drive, Clermont, FL 34711.

3. On August 12, 2020, the Clerk of Court entered default against Mr. Toledo and Gate1Access (D.E. 18).

4. By way of this Motion, Plaintiff seeks entry of a final default judgment against Gate1Access and Mr. Toledo pursuant to Rule 55 of the Federal Rules of Civil Procedure.

### **Rule 55 Standard**

Federal Rule of Civil Procedure 55 provides the requirements for entry of a default judgment. A default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances, the case never has been placed at issue." Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc., 803 F. 2d 1130, 1134 (11th Cir. 1986). "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather the court must determine both the amount and character of damages." *Virgin Records Am., Inc. v. Lacey,* 510 F. Supp. 2d 588, 593 n. 5 (S.D. Ala. 2007); *see, e.g., Nishimastu Const. Co. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975).[1]

If the facts in the Complaint are sufficient the establish liability, then the court must conduct an inquiry to ascertain the amount of damages. *Adolph Coors C. v. Movement Against Racism & the Klan*, 777 F. 2d 1538, 1543-44 (11th Cir. 1985). To make a damages determination, "[a]n evidentiary hearing is not a *per se* requirement" for default judgment under Rule 55(b)(2) because this rule "speaks of evidentiary hearings in a permissive tone." S.E.C. v. Smyth, 420 F. 3d 1225,

---

[1] In *Bonner v. City of Pritchard*, 661 F. 2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit handed down prior to the close of business on September 39, 1981.

2

1232 n. 13 (11th Cir. 2005). Although there is no *per se* hearing requirement, a hearing should ordinarily be held except in "limited circumstances" such as when "all essential evidence is already of record." Id.

Indeed, District courts in the Eleventh Circuit have noted that an evidentiary hearing is not necessary where the moving party has provided supporting affidavits as to the issue of damages. *See, e.g. PNCEF, LLC v. Hendricks Bldg. Supply LLC,* 740 F. Supp. 2d 1287, 1292 n. 9 (S. D. Ala. 2010)(citing cases); *Taylor v. Wachovia Mortg. Corp.,* No. 1:07–cv–2671, 2009 WL 249353, *11 (N.D. Ga. Jan. 30, 2009)("where an adequate record has been made via affidavits and documentary evidence to show statutory damages, no evidentiary hearing is required").

Such is the case here. A hearing on damages is unnecessary because the essential evidence as to these damages is already in the record, including the affidavits submitted herein.[2] This is an action under the Lanham Act for unfair competition, false designation of origin and dilution related to Ghost Controls' federally registered and common law trademarks, as well as intentional infringement under the United States Copyright Act of 1976. In addition, this action also involves substantial and related state claims based on violation of Florida's Deceptive and Unfair Trade Practices Act and for common law trademark infringement. Monetary and injunctive relief are sought as permitted under the respective sources of these claims.

**Lanham Act.** The monetary damages available to a Lanham Act trademark plaintiff can be divided into five rough categories: recovery of the defendant's profits, actual business damages and out-of-pocket losses (like corrective advertising), lost profits, punitive damages, and attorneys' fees. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.,* 921 F. 3d 1343, 1353 (11th Cir. 2019); 15 U.S.C. § 1117(a). "Actual damages" in this context covers everything from damages from lost

---

[2] To the extent the Court were to hold otherwise, Plaintiff would respectfully request an evidentiary hearing in order to provide testimony and/or documentary evidence to satisfy such a damages determination.

sales or licensing fees due to the infringer's sale of offending goods to intangible harm like reputational damage and loss of good will. *Id.* A trademark plaintiff "may recover for all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts." *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 597 F. 2d 71, 75 (5th Cir. 1979)(permitting recovery of damages in the amount that the infringer would have had to pay the plaintiff for nonexclusive license to use the marks).

The primary limiting principle is that the damages may not be "speculative." *See, e.g., Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F. 2d 1562, 1564 (11th Cir. 1986)("[t]he partners stress that a trademark infringement award must be based on proof of actual damages and that some evidence of harm arising from the violation must exist.... We must decide whether the district court's assessment of the actual damages or harm suffered by Ramada Inns was speculative."). The disgorgement of profits and the closely related remedy of an accounting are much different. "The remedy of damages seeks to compensate the victim for its loss, whereas the remedy of an accounting ... [seeks] disgorgement of ill-gotten profits." *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prods., LLC,* —— U.S. ——, 137 S. Ct. 954, 964 (2017).

The Lanham Act permits recovery of profits because actual damages are often difficult to prove. *Hard Candy*, 921 F. 3d at 1353. It "shifts the burden of proving economic injury off the innocent party, and places the hardship of disproving economic gain onto the infringer." *George Basch Co. v. Blue Coral, Inc.,* 968 F. 2d 1532, 1539 (2d Cir. 1992); *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.,* 833 F. 2d 1484, 1487–88 (11th Cir. 1987). The statute does so by expressly providing that "the plaintiff shall be required to prove defendant's sales only," while the "defendant must prove all elements of cost or deduction claimed" against its profits. 15 U.S.C. § 1117(a). So, when a plaintiff seeks an accounting and disgorgement of profits as a remedy for

trademark infringement, the focus is entirely on the alleged infringer's gain; the plaintiff is not required to present any evidence of particular financial harm that it suffered so as to justify legal redress. *Hard Candy*, 921 F. 3d at 1354.

In addition, there is statutory damages. In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. § 1117(c)(1). In addition, if the Court finds that the defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. § 1117(c)(2).

This Court has wide discretion to determine the amount of statutory damages. *Petmed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004) (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F. 2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or nonexistent."); *Playboy Enter., Inc. v. Universal Tel–A–Talk, Inc.*, No. Civ. A. 96–6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *Petmed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "[e]specially appropriate in default judgment cases due to infringer nondisclosure").

Here, as reflected by the affidavit of Joseph A. Kelley, the Defendants have intentionally continued to engage in activities willfully infringing upon Ghost Controls' registered trademarks by wrongfully reproducing and selling products under such marks, despite being placed on actual notice of Ghost Controls' trademark rights, including by way of service of the present suit. As a result of the nature of the Defendants' business and their business methods, it is impossible for Ghost Controls to ascertain the full extent of wrongful sales and profits received by the Defendants and accordingly the lost sales by Ghost Controls from the present infringement; however, Ghost Controls has conservatively estimated that for just the period of March 2020 through August 2020, not calculating any sales prior to this date or the continued sales since, the Defendants likely made sales equating to an estimated $49,389.95 in lost revenue for Ghost Controls. Consequently, while limited estimates of damages can be surmised for the most recent infringement, the full extent of actual damages cannot readily be ascertained, especially where the Defendants have not cooperated with the present litigation, making statutory damages a more appropriate remedy in the present case.

**Copyright Act.** The Copyright Act states that, in addition to recovering actual damages, a copyright owner may recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages." 17 U.S.C. § 504(b). "With respect to profits, the plaintiff must show a causal relationship between the infringement and profits and must also present proof of the infringer's gross revenue." *Pronman v. Styles*, 645 Fed. Appx. 870, 873 (11th Cir. 2016). In addition, to actual damages and profits, there is statutory damages. Statutory damages are also set out 17 U.S.C. § 504. Under 17 U.S.C. § 412, statutory damages are only available for works that were registered with the Copyright Office prior to infringement,

which is the case here.  The basic level of damages is between $750 and $30,000 per work, at the discretion of the court.  Plaintiffs who can show willful infringement may be entitled to damages up to $150,000 per work.

**State Claims.**  Ghost Controls also seeks relief under Florida's Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.207-501.2075 ("FDUPTA"), as well as for common law trademark infringement.  Under FDUPTA, a party can recover what the statute refers to as "actual damages."  *See* Fla. Stat. s. 501.211(2) ("[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs…."). While FDUPTA does not define the term "actual damages," Florida courts (and federal courts interpreting Florida law) have maintained that "actual damages" refers to the "difference in the market value of the product or service in the condition it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."  *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006); *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. 3d DCA 1984).

**Injunctive Relief.**  The Lanham Act, the Copyright Act and FDUPTA all provide for injunctive relief to Ghost Controls in this instance.  "Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction."  *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.,* 522 F. 3d 1200, 1208 (11th Cir.2008).

"[I]n ordinary trademark infringement actions[,] complete injunctions against the infringing party are the order of the day. The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks ...." *Angel Flight*, 522 F. 3d at 1209. Furthermore, the Eleventh Circuit has noted that "[i]t is generally recognized in trademark infringement cases that (1) there is no adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm." *Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.,* 889 F. 2d 1018, 1029 (11th Cir. 1989).

Similarly, the Copyright Act clearly contemplates injunctive relief to "prevent" infringement. In re Capital Cities/ABC, Inc., 918 F. 2d 140, 143 (11th Cir. 1990); *see Salinger v. Random House, Inc.,* 811 F. 2d 90 (2d Cir.1987)(directing district court to issue a preliminary injunction restraining the defendant from publishing a biography of author J.D. Salinger which copied Salinger's protected expression); *Gilliam v. American Broadcasting Companies, Inc.,* 538 F.2d 14 (2d Cir.1976)(directing district court to enter preliminary injunction to prevent ABC from broadcasting Monty Python program in unauthorized, edited form); *Universal City Studios v. Film Ventures International,* 543 F. Supp. 1134 (C.D. Cal. 1982)(preliminary injunction against owners of the movie "Great White," which movie was found to be substantially similar to the film "Jaws").

In this instance, as to Ghost Controls' Lanham Act claims, Ghost Controls request the Court to enter an injunction permanently enjoining the Defendants, their employees, agents, officers, directors and assigns, and all of those in active concert and participation with any of the foregoing persons, a permanent injunction barring same from: (a) manufacturing, distributing, selling, marketing, advertising or promoting, any goods bearing the Infringing Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Ghost Controls Trademarks; (b) engaging in any activity constituting unfair

competition with Plaintiff; (c) engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's Ghost Controls Marks; (c) making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants; (d) registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Ghost Controls Trademarks or any other mark that infringes or is likely to be confused with Plaintiff's Ghost Controls Trademarks, or any goods or services of Plaintiff, or Plaintiff as their source; (e) directing Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all materials that feature or bear any designation or mark incorporating the Ghost Controls Trademarks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Ghost Controls Trademarks; (f) directing that Defendants recall and deliver up for destruction or other disposition all goods, packaging, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the Ghost Controls Trademarks or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's Ghost Controls Trademarks.

As to Ghost Controls' claims based on the Copyright Act, entering an injunction permanently enjoining the Defendants, their employees, agents, officers, directors and assigns, and all of those in active concert and participation with any of the foregoing persons, a permanent injunction barring same from: (a) manufacturing, distributing, marketing, advertising, promoting,

displaying, or selling or authorizing any third party to manufacture, distribute, market, advertise, promote, display, or sell the Copyrighted Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work; (b) that Defendants be ordered to destroy or deliver up for destruction all materials in Defendants' possession, custody, or control used by Defendants in connection with Defendants' infringing conduct, including without limitation all remaining inventory of the Copyrighted Work and any products and works that embody any reproduction or other copy or colorable imitation of the Copyrighted Work, as well as all means for manufacturing them; and (c) that Defendants, at their own expense, be ordered to recall the Copyrighted Work from any distributors, retailers, vendors, or others that have distributed the Copyrighted Work on Defendants' behalf, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work, and that Defendants be ordered to destroy or deliver up for destruction all materials returned to it.

**Attorneys' Fees**. As noted above, the Lanham Act allows a prevailing party to recover attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a) but does not define "exceptional case." Most courts have held that a prevailing plaintiff may recover attorneys' fees when infringement is shown to be malicious, fraudulent, deliberate or willful. Under the Copyright Act, trial courts have the discretion to award prevailing parties their attorneys' fees. 17 U.S.C. § 505; *Montgomery v. Noga,* 168 F.3d 1282, 1304 (11th Cir. 1999)(attorneys' fees may be assessed "as a matter of the court's discretion").

Courts award plaintiffs their "full costs and attorney's fees in order to: (1) deter future copyright infringement; (2) ensure that all holders of copyrights which have been infringed will have equal access to the court to protect their works; and (3) penalize the losing party and compensate the prevailing party." *Arista Records, Inc. v. Beker Enters.,* 298 F. Supp. 2d 1310,

1315 (S.D. Fla. 2003). In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court set forth nonexclusive factors to guide district courts considering an award of fees. "These factors include frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty,* 510 U.S. at 535 n. 19.

Such is the case here, where there has been intentional and flagrant counterfeiting of Ghost Controls' products and product manuals and the infringement of Ghost Controls trademarks and copyright materials, as further indicated by the affidavit of Joseph A. Kelley.

WHEREFORE, Plaintiff, Ghost Controls, respectfully moves the Court for entry of a final default judgment against both Gate1Acess and Mr. Toledo, jointly and severally, for damages, attorneys' fees and injunctive relief, in accordance with Federal Rule of Civil Procedure 55, along with all such other relief which is just and appropriate.

Dated: September 21, 2020.

Respectfully submitted,

By: /s/ Andrew S. Rapacke
Attorney for Plaintiff
The Rapacke Law Group, P.A.
Florida Bar No. 0116247
1840 N. Pine Island Road
Plantation, FL 33322
Telephone: (954) 951-0154
Facsimile: (954) 206-0484
Email: andy@arapackelaw.com