UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**GHOST CONTROLS, LLC, a Florida**
**Limited Liability Company**

      **Plaintiff,**

**v.**                                                              **Case No: 5:20-cv-288-Oc-37PRL**

**GATE1ACCESS LLC. and JULIO**
**TOLEDO,**

      **Defendants.**

_____

## REPORT AND RECOMMENDATION[1]

In this trademark and copyright infringement case, Plaintiff seeks an entry of default judgment, including monetary damages and injunctive relief for Defendants' alleged infringement of three registered trademarks and one copyrighted work. (Doc. 19). To date, Defendants have not made an appearance in this action. Based on a review of the record, I submit that Plaintiff is entitled to default judgment, a permanent injunction, statutory damages, and attorney's fees.

### I.    BACKGROUND

As alleged in the amended complaint, Plaintiff, Ghost Controls, LLC, a Florida limited liability company, is an industry leader in automatic gate openers and related products, which designs, manufactures, and sells to consumers under its various trademark names and logos. (Doc. 8, ¶¶ 2, 9). Plaintiff owns the following valid and subsisting federal trademark registrations:

    A.  GHOST CONTROLS trademark No. 5,519,466;

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

B. ("GC GHOST CONTROLS") trademark No. 5,519,452; and

C. ("GC") trademark No. 88,861,080. (Doc. 8, ¶¶ 10-14).

Plaintiff also owns the valid and subsisting copyright registration for Ghost Controls AXP1 Premium Remote Transmitter Instructions No. TX 8-860-010. (Doc. 8, ¶¶ 25-27).

Defendant Gate1Access, LLC, is a Florida limited liability company engaged in manufacture, marketing, and sale of electric and hydraulic gate openers, including parts and accessories. (Doc. 8, ¶ 30). Defendant Julio Toledo is the manager and registered agent of Gate1Access. (Doc. 8, ¶ 4). Plaintiff claims that the defendants have been using marks identical and confusingly similar to Plaintiff's GHOST CONTROLS trademark, GC GHOSTCONTROLS trademark, and GC trademark in product listings and located on the products, including a remote transmitter. (Doc. 8, ¶¶ 30-39). Defendants sell the remote transmitter with the plaintiff's copyrighted instructions. (Doc. 8, ¶¶ 40-43)

On April 13, 2020, the plaintiff sent the defendants a cease and desist letter and to date has not heard back. (Doc. 8, ¶ 44). On April 27, the plaintiff ordered goods from the defendants and the goods still contained the registered trademarks and were packaged with the copyrighted instructions manual. (Docs. 8, ¶ 45).

On June 25, Ghost Controls initiated this suit against the defendants asserting claims under the Lanham Act, Copyright Act, and Florida state law. (Doc. 1). On July 17, the plaintiff served the complaint and summons on the defendants. (Doc. 15). Defendants failed to file a responsive pleading, and the Clerk entered default. (Doc. 18). To date, the defendants have not sought to vacate the default or otherwise appear or defend this action. On September 21, Ghost Controls filed the instant motion for default judgment. (Doc. 19).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, a two-part process exists for obtaining a default judgment. First, the party must obtain an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Second, "the party must apply to the court for default judgment." Fed. R. Civ. P. 55(b). Although "a default is not treated as an absolute confession by the defendant of his [or her] liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007) (internal quotation marks omitted). Thus, the court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* Additionally, before entering a default judgment, a court has "an obligation to assure there is a legitimate basis for any damage award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007).

Further, although "well-pleaded facts in the Complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n. 5 (S.D. Ala. 2007). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.3d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for the award). Finally, under Rule 55(b) the court has discretion to hold an evidentiary hearing to determine appropriate damages, but it is not required to, particularly where there is sufficient

evidence in the record. *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 Fed. App'x. 908, 911–12 (11th Cir. 2011).

### III.   DISCUSSION

#### A.  Liability

A default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" itself in a lawsuit. Fed. R. Civ. P. 55(a). Here, the defendants failed to participate in this case, despite the fact that they were provided with notice of it on July 17, 2020. (Doc. 15). Therefore, so long as Ghost Controls' factual allegations support each element of its claims, a default judgment is appropriate.

*1. Count I: Trademark Infringement under the Lanham Act*

Ghost Controls claims that the defendants violated the Lanham Act, 15 U.S.C. § 1114(1), by infringing on its federally registered trademarks—GHOST CONTROLS, GC GHOST CONTROLS, and GC.

To prevail on a claim of trademark infringement, Ghost Controls must establish that: (1) it possesses a valid mark; (2) the defendants used the mark or a colorable imitation of the mark; (3) the defendants' use of the mark occurred "in commerce;" (4) the defendants used the mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services;" and (5) the defendants used the mark in a manner likely to confuse consumers. 15 U.S.C. § 1114(1)(a); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1218 (11th Cir. 2008). Ghost Controls attached the three trademark registrations for its marks. (Doc. 8, Exhibits 1-3). After five years of continuous use, the Lanham Act allows the owner of a registered trademark to obtain "incontestable" status. Once a registration has achieved incontestable status, that status is treated as conclusive evidence of the registrant's right to use the trademark, subject

to enumerated defenses. 15 U.S.C. §§ 1065, 1115(b); s*ee also Wilhelm Pudenz, GmbH v. Littlefuse, Inc.,* 177 F.3d 1204, 1208 (11th Cir. 1999).

Here, by failing to answer the complaint, the defendants admit that Ghost Controls registered the three marks and that the GHOST CONTROLS and GC GHOST CONTROLS marks have obtained incontestable status. This is sufficient to establish that Ghost Controls possesses valid marks. Ghost Controls has alleged that the defendants adopted and began using marks identical and confusingly similar to its trademarks in U.S. commerce. Ghost Controls further alleged that the defendants used these marks in product listings and that the marks were physically located on the goods. Finally, the defendants admit (through their default) that their unauthorized use of the marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Gate1Access' goods, and the use of the marks were committed with the willful intent to cause confusion.

Individuals can be held personally liable for trademark infringement under the Lanham Act. *Babbit Elecs. Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) ("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing the corporate veil."); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) ("Natural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act" because "if there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done."). Here, Ghost Controls alleges, and the defendants admit, that Defendant Toledo personally directed, controlled, and participated in the unfair activity.

Because all elements of trademark infringement have been established, the defendants are liable for trademark infringement under 15 U.S.C. § 1114(1)(a).

### 2. Count 2- Unfair Competition under the Lanham Act

To prevail on a claim of unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), Ghost Controls must establish that (1) it had trademark rights in the marks at issue and (2) the defendants adopted a mark that was the same or confusingly similar to the plaintiff's marks such that consumers were likely to confuse the two. *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012). The same facts supporting a claim of trademark infringement support a cause of action for unfair competition. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991). As discussed above, Ghost Controls has established that it has prior rights to the federally registered marks and that the defendants' mark is confusingly similar and likely to confuse consumers. Therefore, the defendants are also liable for unfair competition under the Lanham Act.

### 3. Count 3- Trademark Dilution under the Lanham Act

To prevail on a federal trademark dilution claim under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), Ghost Controls must establish that (1) its mark is famous, (2) the defendants adopted the mark after the plaintiff's mark became famous, (3) the defendants' mark diluted the plaintiff's mark, and (4) the defendants' use is commercial and in commerce. *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009) (citing *Jada Toys, Inc. v. Mattel, Inc.,* 518 F.3d 628, 633 (9th Cir.2008).

Again, by failing to answer the complaint, the defendants admit that the plaintiff's marks are famous, the marks became famous prior to the defendants' adoption of the marks, the acts of the defendants' have diluted the distinctive quality of Ghost Controls' famous marks, and the

defendants' use was done in U.S. commerce. Accordingly, all elements of federal trademark dilution have been established and the defendants are liable for federal trademark dilution under the Lanham Act.

### 4. Count IV Florida common law trademark infringement

The analysis of liability under Florida common law trademark infringement is the same as under the Lanham Act. *Gift of Learning Found., Inc. v. TGC, Inc.,* 329 F.3d 792, 802 (11th Cir. 2003). Because Ghost Controls has established the elements of federal trademark infringement, the defendants are liable for Florida common law trademark infringement as well.

### 5. Count 5- Florida's Deceptive and Unfair Trade Practices Act

To prevail on a claim under Florida's Deceptive and Unfair Trade Practices Act Fla. Stat. §§ 501.207-501.2075 ("FDUTPA"), Ghost Controls must show: "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages or aggrievement." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007). Engaging in trademark infringement is an unfair and deceptive trade practice for purposes of FDUTPA. *Sun Protection Factory, Inc. v. Tender Corp.*, No. 6:04–cv–723–Orl–19KRS, 2005 WL 2484710, at * 13 (M.D. Fla. Oct. 7, 2005). By virtue of their default, the defendants admit that they provided false and misleading representations and deceptive conduct that caused the plaintiff to sustain damages.

To hold an individual liable under the FDUTPA, a plaintiff must also show that the individual was a "'direct participant' in the improper dealings." *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 666 F. Supp. 2d 1299, 1311 (M.D. Fla. 2009) (quoting *KC Leisure, Inc. v. Haber,* 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008). Here, Ghost Controls alleged that Defendant Toledo personally directed, controlled, and participated in the unfair activity.

Because the well-pleaded facts in the complaint are sufficient to establish each element of the FDUTPA claim, both defendants are liable for violating Florida's Deceptive and Unfair Trade Practices Act.

### 6. Count VI- Federal Copyright Infringement

To prevail on a copyright infringement claim, Ghost Controls must show that (1) it owns a valid copyright and (2) defendants copied the copyrighted work. *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011).

A "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Ghost Controls has provided the Court with the copyright registrations for the copyrighted work made within five years after its first publication. (Doc. 8, Exhibit 6). Ghost Controls also alleged that the defendants reproduced, distributed, and sold the copyrighted work without the plaintiff's permission.

Under the Copyright Act, an individual who can control the acts of a corporation may be held jointly and severally liable with the corporate entity for copyright infringements, even in the absence of the individual's actual knowledge of the infringements. *Southern Bell Telephone and Telegraph Co. v. Associated Telephone Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985) (affirming liability of individuals who had a financial interest in the infringing activity and the right to supervise the infringing activities, and holding that "[l]iability falls on all of them even if they were ignorant of the infringement"); *Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc*., No. 8:11L-CV-2056-T-17, 2013 WL 5487066, at *6 (M.D. Fla. Sept. 30, 2013), *aff'd,* 772 F.3d 1254 (11th Cir. 2014) ("[I]t is well established that a corporate officer will be liable as a joint tortfeasor

with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement.").

Here, Ghost Controls alleged that Defendant Toledo is the manager and registered agent of Gate1Access, and was the "moving, active, conscious force of Gate1Access, directing and controlling" its actions. (Doc. 8, ¶ 4). Ghost Controls has alleged facts sufficient to support the liability of both of the defendants.

### B. Relief requested

#### 1. Monetary damages

Ghost Controls seeks statutory damages under both the Copyright and the Lanham Act. 15 U.S.C. § 1117(c); 17 U.S.C. § 504. Although Ghost Controls is permitted to recover actual damages from the defendants for their infringement, the plaintiff notes that the full extent of these actual damages cannot readily be ascertained because the defendants have not cooperated in this suit. Therefore, Ghost Controls requests that statutory damages be awarded instead. *See PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004) ("Several courts have found statutory damages [e]specially appropriate in default judgment cases due to infringer nondisclosure."). Additionally, Ghost Controls asserts that a hearing on damages is not necessary because it has provided the court with the essential evidence as to damages.

Under the Lanham Act, a plaintiff may elect to recover, instead of actual damages, statutory damages for the use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c). Alternatively, if the court finds that the use of the mark was willful, an award of statutory

damages in the amount of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c).

The Copyright Act also permits a plaintiff to elect either actual or statutory damages. 17 U.S.C. § 504. Statutory damages must be calculated according to the number of separately copyrightable works infringed, not on the number of infringements. *Disney Enters., Inc. v. Law*, No. 6:07–cv–1153–Orl–18GJK, 2008 WL 203393, at *4 (M.D. Fla. Jan.23, 2008). Courts have discretion to award between $750 and $30,000 in statutory damages for all infringements of each work under 17 U.S.C. § 504(c). When the copyright owner sustains the burden of proving that an infringement was committed willfully, the court may increase the award of statutory damages up to $150,000. Plaintiff requests that the Court determine its statutory damages without an evidentiary hearing. (Doc. 19).

Plaintiff has submitted the affidavit of Chief Executive Officer of Ghost Controls, Joseph A. Kelley. (Doc. 19-1). Mr. Kelley stated that the defendants adopted and used marks that are identical and confusingly similar to Ghost Controls' trademarks. (Doc. 19-1, ¶¶ 20-21). The infringing marks included the use of the wording "Ghost Controls" in the product listing, and a stylized GC logo design in product listings and on the goods being sold. (Doc. 19-1, ¶ 21). The GC mark was also located on the buttons of the gate controller in the exact same style, font, location, and orientation as Ghost Controls' goods. (*Id.*). Defendants also reproduced and distributed identical copies of Ghost Controls' copyrighted instruction manual with the remote transmitters being sold under the infringing marks. (Doc. 19-1, ¶ 24).

On April 13, 2020, Ghost Controls' counsel sent a cease and desist letter to the defendants objecting to the use of the infringing trademarks and copyrighted work. (Doc. 19-1, ¶ 26). Ghost Controls never received a response. (*Id.*). On April 27, 2020, Ghost Controls placed an order for

the defendants' goods, which still bore the Ghost Controls' trademarks and included the copyrighted work. (Doc. 19-1, ¶ 27). Even after the commencement of this action, and after having served initial process on the defendants, they have continued with these infringing acts. (Doc. 19-1, ¶ 35). A court may infer willfulness from a default and from continued infringing behavior after being given notice. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1220. Ghost Controls has shown that the defendants willfully infringed on its trademarks and copyright.

The Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." *Nike, Inc. v. Austin*, No. 6:09-CV-796-ORL28KRS, 2009 WL 3535500, at *4 (M.D. Fla. Oct. 28, 2009). Courts have discretion to determine damages within the statutory limits. *See Cable/Home Commc'n Corp. v. Network Prods., Inc*., 902 F.2d 829, 852 (11th Cir. 1990). To determine an appropriate amount of damages, courts have looked to the Copyright Act's statutory damages provision as guidance. *Nike, Inc.,* 2009 WL 3535500, at *4. Under the Copyright Act, courts may consider factors such as: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Nike, Inc.*, 2009 WL 3535500, at *4.

Although Ghost Controls does not specify the amount it requests under the Lanham Act, Mr. Kelley estimates at least $49,389.95 in lost revenue for Ghost Controls, and notes that this amount only represents a fraction of the defendants' infringing sales to date. (Doc. 19-1, ¶ 32). Taking this estimation into account, and considering the factors discussed above, statutory damages of $25,000 per trademark infringed, for a total of $75,000, is reasonable to compensate

Ghost Controls and deter further unlawful conduct. *See Kobe Japanese Steak House of Fla., Inc. v. XU, Inc.*, No. 8:14-CV-490-T-23MAP, 2014 WL 6608967, at *6 (M.D. Fla. Nov. 20, 2014) (awarding $100,000 in statutory damages under the Lanham act where the estimated damages calculation was $40,320 and the defendant's conduct was willful).

Plaintiff requests $150,000 in statutory damages for the willful infringement of its copyright. Plaintiff is not automatically entitled to the maximum amount of statutory damages just because it has shown that the defendants acted willfully. *See Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1312 (M.D. Fla. 2008). Ghost Controls has not provided any discussion on why it believes $150,000 is a reasonable amount for the damages it sustained. "'Statutory damages are not intended to provide a plaintiff with a windfall recovery;' they should bear some relationship to the actual damages suffered." *Id.* at 1313 (quoting *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 569 (S.D.N.Y. 1995)). Considering the estimated revenue lost and the willfulness of the defendants' infringements, a total of $31,000 in statutory damages per infringed copyright is reasonable to compensate the plaintiff and deter further unlawful conduct. *See Clever Covers, Inc.*, 554 F. Supp. 2d at 1312 (awarding $31,000 per infringed copyright when the plaintiff requested $150,000 but did not provide evidence of lost sales, profit, or licensing fees); *see also Zomba Enterprises, Inc. v. Panorama Records, Inc*., 491 F.3d 574, 586 (6th Cir. 2007) (affirming an award of $31,000 per work when the plaintiff requested $150,000 because of the actual dollar amounts involved in the case).

Although a plaintiff is permitted to recover "actual damages" under FDUPTA, Ghost Controls has not specified the amount in actual damages it seeks. Fla. Stat. § 501.211(2). Additionally, as discussed above, Ghost Controls specifically requested statutory damages under

both the Lanham Act and Copyright Act because actual damages were not possible to determine. Therefore, the court should only award statutory damages for the trademark and copyright claims.

*2. Injunctive relief*

The Copyright Act, the Lanham Act and FDUTPA specifically provide for injunctive relief. 15 U.S.C. § 1116(a); 17 U.S.C. § 502(a); Fla. Stat. § 501.211. To determine whether injunctive relief is warranted, Ghost Controls must establish: (1) irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Ebay Inc. v. Mercexchange, LLC*, 547 U.S. 388, 391 (2006).

In this case, through default, the defendants admit that they are intentionally using Plaintiff's federally registered marks and copyrighted work to deceive the public. Ghost Controls' counsel sent a cease and desist letter to the defendants objecting to the use of the infringing trademarks and copyrighted and the defendants never responded. (Doc. 19-1, ¶ 26). Defendants' product listings include the words "Ghost Controls" and the "GC" trademark. The gate controller includes the "GC" mark in the exact style, font, location, and orientation as Plaintiff's goods. (Doc. 19-1, ¶ 21). The controller is also shipped with Plaintiff's copyrighted instruction manual. (Doc. 19-1, ¶ 27). The retail price for Plaintiff's AXP1 remote controller is $36.97, and Defendants version is sold for between $13.85 and $15.81. (Doc. 19-1, ¶ 28). Plaintiff's online sales account for 69% of total sales per unit for its remotes, and approximately 79% of the total sales in revenue dollars for its remotes. (Doc. 19-1, ¶ 29). From March 2020 through August 2020, Plaintiff's online sales for its AXP1 remotes totaled 4,602 units comprising $164,633.17 in revenue. (*Id.*). Mr.

Kelley notes that as of April 10, 2020, Defendants' eBay listings of the counterfeit remotes displayed total sales of 225 remotes. (Doc. 19-1, ¶ 30).

Plaintiff has established irreparable injury to its goodwill and reputation, and that the defendants conduct will continue to damage Plaintiff and confuse the public unless enjoined. Plaintiff has established that monetary damages alone are inadequate to compensate for the continuing use of the registered trademarks and copyright. Ghost Controls' interest in maintaining the integrity of the goodwill it has built up in its trademarks and copyrights outweighs any injury the defendants may suffer. Moreover, the public interest is served by ensuring that the defendants are not confusing the public by using similar, or identical, marks or materials that the plaintiff has legally registered.

Therefore, Ghost Controls is entitled to a permanent injunction against the defendants which enjoins them both from directly or indirectly infringing Ghost Controls' rights in its copyright and trademarks including: (a) manufacturing, distributing, selling, marketing, advertising, or promoting any goods bearing marks confusingly similar to or identical to Plaintiff's trademarks or containing any copyrighted work; (b) engaging in any activity constituting unfair competition with Plaintiff; (c) engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's trademarks; (d) making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that: (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants; (e) registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Ghost

Controls trademarks or any other mark that infringes or is likely to be confused with Plaintiff's Ghost Controls trademarks, or any goods or services of Plaintiff, or Plaintiff as their source; (f) directing Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all materials that feature or bear any designation or mark incorporating the Ghost Controls trademarks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Ghost Controls' trademarks; (g) directing that Defendants recall and deliver up for destruction or other disposition all goods, packaging, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the Ghost Controls trademarks or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's Ghost Controls trademarks; (h) directing Defendants to destroy or deliver up for destruction all materials in Defendants' possession, custody, or control used by Defendants in connection with Defendants' infringing conduct, including without limitation all remaining inventory of the copyrighted material and any products and works that embody any reproduction or other copy or colorable imitation of the copyrighted material, as well as all means for manufacturing them; and (i) that Defendants, at their own expense, be ordered to recall the copyrighted material from any distributors, retailers, vendors, or others that have distributed the material on Defendants' behalf, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the copyrighted material, and that Defendants be ordered to destroy or deliver up for destruction all materials returned to it.

### 3.  Attorney's fees

The Copyright Act provides that a court may award reasonable attorney's fees to the prevailing party. 17 U.S.C. § 505. In exercising its discretion, the court may consider factors

including: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 (1994).

Ghost Controls seeks an award of $13,050 in attorney's fees. (Doc. 19-2). Ghost Controls has included an affidavit from its counsel, Andrew Rapacke (Doc. 12-2); invoices detailing the work that attorneys Mr. Rapacke and Benjamin Bedrava have done in this case (Doc. 19-2); and an affidavit from John M. Bustamante, an expert retained by the plaintiff's counsel to provide his opinion regarding the reasonableness of the fees. (Doc. 19-3). Ghost Controls seeks a total of $13,050 made up of 65.25 hours at a reduced rate of $200 per hour. Mr. Bustamante opined that $12,350 in attorney's fees is reasonable in the instant case, and that the number of hours should be reduced to 61.75 hours. (Doc. 19-3).

To determine the reasonableness of the fees requested, the court must first determine the number of hours reasonably expended on the litigation. The attorney fee applicant should present records detailing the amount of work performed. Attorneys "must exercise their own billing judgment to exclude any hours that are excessive, redundant, or otherwise unnecessary." *Galdames v. N&D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011). A court may reduce excessive, redundant, or otherwise unnecessary hours, or may engage in "an across-the-board cut," as long as the court adequately explains its reasons for doing so. *Id.*

The court agrees with Mr. Bustamante that the 65.25 hours should be reduced to 61.75 hours. The hours should be reduced as follows: the time entry on July 14 for .5 hours regarding correspondence with the Clerk about the proposed summons is clerical in nature and should not be included; the time entry on July 17 for 1.5 hours regarding correspondence with the process server about serving the defendants should be reduced to .5 hours; and the entry on August 8 for 4.5 hours

for researching default and finial judgment should be reduced to 2.5 hours. A total of 61.75 hours is a reasonable number of hours spent on this type of litigation. *See Bellinzoni, S.R.L. v. Bell Italy Sol. Corp.*, No. 618CV1971ORL22GJK, 2020 WL 1977031, at *2 (M.D. Fla. Apr. 8, 2020), *report and recommendation adopted sub nom. Bellinzoni, S.r.l v. Bell Italy Sol. Corp*., No. 618CV1971ORL22GJK, 2020 WL 1974221 (M.D. Fla. Apr. 24, 2020) (finding 94.4 hours reasonable after default judgment was granted in a suit brought under the Lanham Act and FDUTPA).

Next, the court must assess the reasonableness of the hourly rate. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates. *Id*. The trial court, itself, is an expert on the question of the reasonableness of fees and may consider its own knowledge and experience. *Id*. at 1303. Plaintiff seeks $200 an hour for both Mr. Rapacke and Mr. Bedrava. Mr. Rapacke noted in his affidavit that this rate is reduced from the usual $400 charged by him and $300 charged by Mr. Bedrava. (Doc. 19-2). An hourly rate of $200 is reasonable and comparable to similar services in the Middle District.[2] Accordingly, Plaintiff should be awarded $12,350 in attorney's fees.

---

[2] This court has previously approved rates higher than what the plaintiff seeks in other complex civil litigation cases. *See Rizzo-Alderson v. Tawfik*, No. 5:17-CV-312-OC-37PRL, 2019 WL 3324298, at *3 (M.D. Fla. July 1, 2019), *report and recommendation adopted sub nom. Rizzo-Alderson v. Eihab H. Tawfik, M.D., P.A.*, No. 5:17-CV-312-OC-37PRL, 2019 WL 3323432 (M.D. Fla. July 24, 2019) (approving an hourly rate of $325); *Truesdell v. Thomas*, No. 5:13-CV-552-OC-10PRL, 2018 WL 6622882, at *3 (M.D. Fla. Nov. 27, 2018), *report and recommendation adopted*, No. 5:13-CV-552-OC-10PRL, 2019 WL 175279 (M.D. Fla. Jan. 11, 2019) (approving an hourly rate of $350); *Skybolt Aerometive Corp. v. MilSpec Prod., Inc.*, No. 5:16-CV-616-OC-PRL, 2017 WL 2464119, at *3 (M.D. Fla. June 7, 2017) (approving an hourly rate of $325).

## IV.    RECOMMENDATION

For the reasons stated above, I recommend that Ghost Controls' motion for default judgment (Doc. 19) be GRANTED and that Ghost Controls be awarded statutory damages in the amount of $106,000, attorney's fees in the amount of $12,350, and that an injunction be entered against Gate1Access, LLC, and Julio Toledo permanently enjoining them from using Ghost Controls' federally registered trademarks and copyright.

Recommended in Ocala, Florida on October 16, 2020.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy