UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GHOST CONTROLS, LLC, a Florida
Limited Liability Company

    Plaintiff,

v.                                    Case No: 5:20-cv-288-RBD-PRL

GATE1ACCESS LLC. and JULIO
TOLEDO,

    Defendants.

## REPORT AND RECOMMENDATION[1]

This matter is before the court on Plaintiff's motion for a finding of contempt for the defendants' violation of the Court's Order. (Doc. 33). The Court ordered the defendants to respond (Doc. 34) and the defendants filed a joint response (Doc. 38). For the reasons discussed below, the motion is due to be granted, but without sanctions.

**I.    BACKGROUND**

On January 6, 2021, the court entered an Order granting Plaintiff's motion for entry of final default judgment. Defendants were directed to:

> a. Immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all materials that feature or bear any designation or mark incorporating the Ghost Controls Trademarks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation or colorable imitation of Plaintiff's Ghost Control Trademarks;

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

> b. Recall and deliver up for destruction or other disposition all goods, packaging, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the Ghost Controls Trademarks or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's Ghost Controls Trademarks;
>
> c. Destroy or deliver up for destruction all materials in Defendants' possession, custody or control used by Defendants in connection with Defendants' infringing conduct, including without limitation all remaining inventory of the copyrighted material and any products and works that embody any reproduction or other copy or colorable imitation of the copyrighted material, as well as all means for manufacturing them;
>
> d. At their own expense, recall and destroy or deliver up for destruction the copyrighted material from any distributors, retailers, vendors, or others that have distributed the material on Defendants' behalf, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the copyrighted material

(Doc. 31).

Now, Plaintiff claims that the defendants have not complied with the Court's Order and have continued to engage in infringing activity. Defendants have responded claiming that none of the product listings infringe on any of the plaintiff's trademarks because they fall under nominative fair use.

## II. DISCUSSION

The Court has the inherent authority to enforce its own orders through the exercise of its contempt powers. *See Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991). In addition, when the court has required a judgment debtor to perform a specific act, and the judgment debtor fails to comply within the time specified, Fed. R. Civ. P. 70(e) permits the court to hold the disobedient party in contempt. *See TracFone Wireless, Inc. v. Holden Property Services, LLC*, 103 F.Supp.3d 1357, 1360 (S.D. Fla. 2015). The Eleventh

Circuit has repeatedly held that "injunctions are enforced through the district court's civil contempt power." *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 828-29 (11th Cir. 2010). When ruling on motions for contempt based on trademark infringement, courts in the Eleventh Circuit have granted such motions when the defendant has, notwithstanding an order enjoining its conduct, continued to engage in the prohibited conduct and acted in disregard of the court's orders barring its actions. *See Tracfone Wireless, Inc. v. Technopark Co., Ltd.*, 313 F.R.D. 680, 688 (S.D. Fla. March 18, 2016). The party seeking contempt bears the initial burden of proving by clear and convincing evidence that a party subject to a court order has violated that order. *See McGregor v. Chierco*, 206 F.3d 1378, 1383 (11th Cir. 2000). The movant must demonstrate that (1) the allegedly violated order was valid and lawful; (2) the order was clear, definite, and unambiguous; and (3) the alleged violator had the ability to comply with the order. *Id.* If the moving party makes a prima facie showing that the party has violated the order, then the burden shifts to that party to produce evidence explaining its noncompliance. *See Federal Trade Commission v. RCA Credit Services*, LLC, No. 8:08-cv-2062-T-27MAP, 2012 WL 11406549, at *1 (M.D. Fla. March 20, 2012).

Here, the Court's Order is valid and lawful, and its terms are clear, definite, and unambiguous. It required Defendants to stop using Plaintiff's federally registered trademarks and Defendants certainly had the ability to comply with the Order. Defendants have now produced evidence explaining that the listings do not violate the Court's Order because the use of "Ghost Controls" was nominative fair use.

Nominative fair use is the use of another's trademark to identify the owner of that mark's goods or services, for the purpose of facilitating the sale of the non-owner's products. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002). To prevail under

the nominative fair use test, Defendants must prove that: "(1) Plaintiff's product or service is not readily identifiable without use of the trademark; (2) Defendants used only so much of the mark as is reasonably necessary to identify the plaintiff's product or service; and (3) the user of the mark does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Commodores Ent. Corp. v. McClary*, No. 614CV1335ORL37GJK, 2016 WL 7366948, at *2 (M.D. Fla. Nov. 15, 2016) (citing *Cairns*, 292 F.3d at 1151). The Court's order doesn't prohibit the defendants from using "Ghost Controls" in listings that pass the nominative fair use test.

In Ghost Controls's motion for default judgment, the exhibits attached showed Gate1Access advertised some of its products as "Ghost Controls [] Remote Transmitter." (Doc. 19). Now, the exhibits attached to Plaintiff's motion for a finding of contempt show Gate1Access's Amazon and eBay listings state that the remotes are "Ghost Controls [] Compatible" (Doc. 33-1, Exhibits A, B, C, E, G), "Compatible Ghost Controls" (Doc. 33-1, Exhibits D, I), or "Gate1Access for Ghost Controls" (Doc. 33-1, Exhibits F, H).

Gate1Access's current use of Plaintiff's trademark in its listings is to show compatibility between Gate1Access's product and Ghost Controls's products. Gate1Access would not be able to explain that its product is compatible with the Ghost Controls's products without using Ghost Controls's name in its listing. *See Ford Motor Co. v. O.E. Wheel Distributors, LLC,* 868 F. Supp. 2d 1350, 1368 (M.D. Fla. 2012) (explaining that under nominative fair use, an automobile dealer could advertise wheels that fit Ford Mustangs, or a computer company could advertise that it sells software that is compatible with Windows and Apple); *see also New Kids on the Block v. News Am. Pub., Inc.,* 971 F.2d 302, 308 (9th Cir. 1992) (finding that under nominative fair use, a newspaper could use the name "New Kids on the Block" in a poll);

*Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir.), *supplemented,* 413 F.2d 1126 (9th Cir. 1969) (finding that a car shop can advertise that it specializes in servicing Volkswagens).

After the nominative fair use defense is established, the burden reverts to the plaintiff to show a likelihood of confusion. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010). To determine whether there is a likelihood of confusion, the court can consider a seven-factor balancing test: "(1) the type of mark; (2) the similarity of the marks; (3) the similarity of the goods the mark represents; (4) the similarity of the parties' retail outlets, trade channels, and customers; (5) the similarity of advertising media; (6) defendant's intent; and (7) actual confusion." *Commodores Ent. Corp. v. Thomas McClary*, No. 614CV1335ORL37GJK, 2015 WL 12843872, at *3 (M.D. Fla. Mar. 10, 2015) (citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007)).

Gate1Access's use of the Ghost Controls mark is necessary to identify that the remote transmitters are compatible with Ghost Controls's products. The only instances where Gate1Access used more of Ghost Controls's mark than necessary to identify the product is when it identified Ghost Controls as the brand of the remotes (as opposed to Gate1Access) on two eBay listings. (Doc. 33-1, Exhibits D, E). Although the listings of the two products stated that the remotes were "Ghost Controls [] Compatible" and "Compatible Ghost Controls," there is a likelihood that consumers would confuse the products as being Ghost Controls's products based on the brand identification. In other words, the use of the mark in the two listings incorrectly reflected that it was a Ghost Controls product instead of a Gate1Access product, which violated the Court's Order prohibiting the defendants from "manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale

and/or use of any and all materials that feature or bear any designation or mark incorporating the Ghost Controls Trademarks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation or colorable imitation of Plaintiff's Ghost Control Trademarks." (Doc. 31). However, the defendants changed the brand shortly after becoming aware of the Ghost Controls infringement report. (Doc. 38-1, ¶¶ 10-15).

The court has broad discretion to fashion a remedy or sanction for civil contempt. *U.S. v. City of Miami,* 195 F.3d 1292, 1298 (11th Cir.1999). A court may impose a coercive daily fine, a compensatory fine, attorney's fees and expenses, and coercive incarceration. *F.T.C. v. RCA Credit Servs., LLC*, No. 8:08-CV-2062-T-27MAP, 2012 WL 11406549, at *1 (M.D. Fla. Mar. 20, 2012) *(citing U.S. v. United Mine Workers of Am.,* 330 U.S. 258, 303–04 (1947); *Smalbein v. City of Daytona Beach,* 353 F.3d 901, 907 (11th Cir.2003)). In determining the amount of sanctions to impose, the court must consider "the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about compliance, and the amount of the contemnor's financial resources and consequent seriousness of the burden to him." *Matter of Trinity Indus., Inc.,* 876 F.2d 1485, 1493–94 (11th Cir.1989).

The Court has already awarded Plaintiff $106,000 in statutory damages and $12,350 in attorney's fees. (Doc. 31). Because of this, as well as the nature of the error and because Defendants changed the brand on the two listings shortly after becoming aware of the issue, additional monetary sanctions would be punitive and ineffective in bringing about compliance at this time. *See Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 616CV366ORL40KRS, 2018 WL 8838771, at *4 (M.D. Fla. May 4, 2018) (J. Byron) (finding violation of injunction, granting motion for contempt, but declining additional sanctions).

### III. Recommendation

For the reasons discussed above, it is recommended that Plaintiff's motion for a finding of contempt (Doc. 33) be GRANTED to the extent that Defendants should be held in civil contempt for their failure to fully comply with the Court's January 6, 2021 Order as to the two eBay listings discussed above. Further, while sanctions are not recommended at this time, Defendants should be notified that any further violations of the Court's Order will result in sanctions.

Recommended in Ocala, Florida on April 29, 2021.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy